UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED by _____ D.C.
MAR 3 1 2011
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

MARISELA DEL CARMEN-IGLESIAS,

Defendant,

vs.  Docket No: 93-cr-00339

UNITED STATES OF AMERICA,

Respondent,
_____/

## PETITIONER'S MOTION TO WITHDRAW PLEA OF GUILTY AND SET ASIDE JUDGEMENT OF CONVICTION AND SENTENCE PURSUANT TO TITLE 28 U.S.C. § 1651

Comes the Defendant, MARISELA DEL-CARMEN IGLESIAS (hereinafter "Petitioner" of "Defendant"), pursuant to the Fifth and Sixth Amendments to the United States Constitution, as well as Title 28, United States Code, Section 1651, the All-Writs Act, and respectfully moves the Court to permit her to withdraw her previous plea of guilty and set aside her Judgment of Conviction and Sentence. As grounds for this motion, Petitioner states as follows:

### SUMMARY OF THE PROCEDURAL BACKGROUND

1. A one count Information was filed against Petitioner and co-defendant, Alex De Arellano charging them with Conspiracy to commit

1

an offense against the United States for possession of a counterfeit. (D. E. 3)

2. The Defendant was released on bond, where she remained incident free. (D.E. 10)

3. On July 15, 1993 an indictment was returned and the Defendant was formally charged with Making, Uttering and Possessing a Counterfeit Security in violation of Title 18 U.S.C. § 371, Count One, Uttering and Possession a Counterfeit Security in violation of Title 18 U.S.C. § 513, Counts 2 -4) (D. E. 13)

4. On August 12, 1993 a superseding indictment adding, co-defendant's Luidi Falla and Nelson Serrano. (D. E. 28)

5. On October 6, 1993, Petitioner pled guilty to count two of the first superseding indictment as per the terms of a plea agreement reached by the parties.

6. On December 6, 1993, Petitioner was sentenced to 8-month imprisonment, 2-years supervised release, along with a $ 50.00 dollars special assessment. The Court also imposed restitution in the amount

of $ 762,238.24.[1]

7. On December 14, 1993 the Judgment and conviction order was entered. (D. E. 77)

8. The defendant did not appeal and completed all terms of her Supervised Release as imposed by this Court.

9. The Defendant has never had any additional charges presented against her and has remained incident free.

## **SUMMARY OF THE FACTS**

Petitioner was married at the time to her co-defendant that was considered to be the leader and organizer of a check counterfeiting ring in Miami, Florida.

Co-defendant Luigi Falla was considered to be her husband's right hand man, made all the phone calls to the victims and to placed all the orders with the vendors. Co-defendant Nelson Serrano was a pick and delivery person along with the confidential information which was not named in the indictment.

At time of sentencing petitioner's husband was asked by her attorney to take the stand and testify on her behalf. He testified to the

---

[1] The restitution was imposed joint and severably with the co-defendants.

fact that Petitioner had no knowledge of any of his business deals nor any involvement in the charged offense.

Irrespective, based on the limited involvement in the offense, Petitioner chose to plead guilty unaware and uninformed of the immigration consequences of her plea. In fact, had any of the immigration consequences been explained even in the most basic of terms, Petitioner would not have pled guilty (See Appendix A) It was not until many years later after the sentence and conviction were served, that the ramifications of the decisions to plead guilty have come to light.

## **LEGAL ARGUMENT**

### **A. Padilla is not a new rule of law.**

In *Padilla v. Kentucky,* 130 S.Ct. 1473 (2010), the Supreme Court held that criminal defense counsel's failure to accurately advise about immigration consequences falls below accepted professional norms. See, *Strickland* v *Washington,* 466 U. S. 668(1984). *Padilla* does not create a new rule or criminal constitutional law and, therefore, *Padilla* governs petitions for post-conviction relief filed after the court's decision.

When faced with a request for post-conviction relief, courts generally look to the law that existed <u>*when a case became final*</u> on direct appeal since the post-conviction is deciding whether the decision was unfair when initially rendered. *Teague v. Lane,* 489 U.S. 288 (1989). If the Supreme Court case creates a new criminal rule after a defendant's case became final, then the default will be that a petition for post-conviction relief cannot benefit from the new rule because it was not the law when the decision became final.

In retrospect, not all new Supreme Court decisions that expand legal rights of a criminal defendant create new rules. If a new Supreme Court case merely applies an existing rule to a different set of facts, then it does not create a new rule, but merely applies correctly the law that existed when a person's case became final. *Williams v. Taylor,* 529 U.S. 362, 390-91 (2000). *Padilla* is an example of such a case. A Supreme Court decision, such as *Padilla, <u>applying an old rule</u>* applies to post-conviction review. *Whorton v. Bockting,* 549 U.S. 406, 416 (2007).

The language in *Padilla* strongly suggests that the decision does not create a new criminal rule. The *Padilla* court went to great lengths to advise that its decision will not "open the flood gates" to a significant

5

number of new post-conviction petitions. *Id.* 130 S.Ct. at 1485. This extensive discussion would not be necessary or make sense if *Padilla* only applied prospectively. Moreover, the court's statement that "[i]t seems unlikely that our decision today will have a significant effect on those convictions already obtained as the result of plea bargains" also contemplates a retroactive application of the court's decision. *Id.*

Finally, the court's discussion of the relationship between *Hill v. Lockhart,* 474 U.S. 52 (1985) and *Strickland* reinforces the position that the court is not articulating a new rule in *Padilla,* 130 S.Ct. 1485 n.12. These discussions by the *Padilla* court make it clear and plain that its decision does not create a new rule.

Although only a few courts have weighed in on the question of *Padilla's* retroactive application, several courts have found the decision may be applied to convictions which became final before the *Padilla* decision on March 31, 2010, and, thereby applied *Padilla* retroactively. See *United States v. Chaidez,* \_\_\_\_\_ F.Supp 2d \_\_\_\_\_, 2010 WL 3184150 (N.D. Ill.); *United States v. Hubenig,* 2010 WL 2650625 at 8 (E.D. Cal. July 1, 2010); *People v. Bennett,* 906 N.Y.S. 2d 696, 700 (N.Y. Crim.Ct. 2010). Based on the language quote above, it is clear that the

6

*Padilla* court understood its decision would be applied retroactively to individuals such as Petitioner.

## B. *Coram Nobis* **is an appropriate remedy.**

A petition for a writ of *coram nobis* pursuant to Title 28, United States Code, Section 1651, the All-Writs Act, is available to challenge federal convictions in the wake of the *Padilla* decision.

At common law, the writ of *coram nobis* existed to correct errors of fact or to make technical corrections in a judgment. *United States v. Morgan,* 346 U.S. 502, 507 (1954). The modern version of this writ is broader than at common law. *United States v. Denedo,* 129 S.Ct. 2213 (2009). The writ of *coram nobis* permits courts in "extraordinary" cases that present compelling circumstances "to achieve justice" where no other remedies are available." *Id. Morgan,* 346 U.S. at 510-11.

According to the Supreme Court, a *coram nobis* petition is not a new proceeding, but an extension of the original proceeding for which Title 28, United States Code, Section 1651, the All-Writs Act, provides jurisdiction to an Article I or Article Three Court to correct an earlier legal or factual error. See *United States v. Morgan,* 346 U.S. 502 (1954)

7

(recognizing Article III Court jurisdiction to consider *coram nobis* to correct depravation of counsel in violation of Sixth Amendment); *United States v. Denedo,* 129 S.Ct. 2213 (2009)(recognizing Article One Court jurisdiction to consider *coram nobis* petition to correct failure to advise about immigration consequences and, thereby, a violation of Sixth Amendment).

In *United States v. Denedo,* the Supreme Court recognized Article I jurisdiction to consider a *Coram Nobis* Petition to correct the failure of an attorney to advise the defendant of immigration consequences of his plea. In *Denedo,* a Nigerian national serving in the United States Navy pleaded guilty in military court to an offense. The plea of guilty, however, came only after his attorney assured him he would not be deported. Six years later, following his discharge from the Navy, he was put in deportation proceedings. Justice Kennedy, writing for five justices, said Denedo's plea could be challenged in an Article I Military Court under Title 28, United States Code, Section 1651.

### C. Petitioner is Entitled to Withdraw her Plea of Guilty and Set Aside her Judgment of Conviction and Sentence.

In the instant matter, defense counsel and the court failed to

advise Petitioner of the ramification of pleading guilty and the implications that the decision would have on her immigration status in the future. There was no warning or explanation of future repercussions. Although, Petitioner has never had any further contact with the criminal justice system, her fate would change when she applied to become an American Citizen, triggering deportation proceedings against her.

Petitoner's personal characteristics and history present "extraordinary" circumstances to justify granting her relief from her Judgment of Conviction and Sentence "to achieve justice, where no other remedies are available." Petitioner has two children, who are citizens of the United States of America. Her Grandson is an American Citizen as well.

Although Petitioner is not a United States citizen, she has been in this country for all of her adult life and is a legal resident of the United States. She has significant business interests in the United States and has strong family and community ties in the United States. Petitioner has no family or community ties to her homeland of Cuba. Her plea to conspiring to Utter a Forged Instrument, while a serious offense, did

not present any injury or threat of injury to any person. She as paid and continues of her restitution as ordered by the Court and has successfully completed her incarceration and her supervised release. If Petitioner is not successful in setting aside her plea of guilty, she may be removed from the United States and her family, her friends and her business interests.

Because this is a "records" or "documents" case, the government will not be prejudiced by the Court granting Petitioner motion to set aside her plea and sentence

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests the Court set aside her plea of guilty and Judgment of Conviction of as previously imposed.

Done this 23, day of March 2011

Respectfully submitted,

_____
MICHAEL C. MINARDI, ESQUIRE
Florida Bar No.: 0568619
MICHAEL MINARDI, P.A.
300 Colorado Ave.
Suite 204
Stuart, FL 34994
BROWARD #: (954) 729-9680
MARTIN #: (772) 463-1079
Facsimile: (954) 827-0553

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of March, 2011, a true and correct copy of the foregoing *Petitioners Motion to Withdraw Plea of Guilty and Set Aside Judgment of Conviction and Sentence Pursuant to Title 28 USC § 1651*, was mailed/electronically filed, to the Clerk of Court Southern District of Florida, and to the United States Attorney General's office.

_____
MICHAEL C. MINARDI, ESQUIRE
Florida Bar No:0568619